[Civ. No. 25877. Third Dist. Sept. 10, 1986.]

GLENN LEE WOODDALL, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**400**

COUNSEL

Holloway, Tauman, Holmes & Fialkowski and Leonard K. Tauman for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Robert D. Marshall, Michael T. Garcia and Alison Aleman, Deputy Attorneys General, for Real Party in Interest.

OPINION

EVANS, J.—A complaint filed in the Municipal Court of San Joaquin County alleged that petitioner had attempted to unlawfully influence the verdict of 14 jurors (Pen. Code, § 95). Following a preliminary hearing in which it was revealed that petitioner had made threatening statements to members of a jury shortly after they had convicted petitioner's brother in a separate action,[1] an information was filed charging petitioner with seven counts of

---

[1]On August 9, 1985, at approximately 6 p.m., the jury returned its verdict in a criminal matter involving the petitioner's brother. The jurors were then discharged and began to leave the courtroom. At that time, petitioner, who was in the spectator section of the courtroom, stood up and told the exiting jurors, "'I'll remember you.'" One exiting juror heard petitioner tell him "'I'll remember you, you son-of-a-bitch, I'll get you.'"

Several members of the jury, as well as petitioner and other spectators at the trial, exited the courtroom into the outside hallway. While the jurors were walking toward the elevators, petitioner pointed his finger at them and said, "'I'm going to remember you and you and you . . . I'm going to remember all of you.'" One juror also heard petitioner state, "'It's going to be your—your guys time, you're going to be paid back time, you guys will regret that.'" The jurors felt threatened and frightened by petitioner's statements.

attempting to influence jurors. He thereafter filed a motion to dismiss pursuant to Penal Code section 995.[2] That motion was denied, and this writ petition followed.

On February 14, 1986, this court issued an alternative writ of prohibition directing respondent superior court to either grant the relief prayed for in the petition or show cause as to why such relief should not be granted. On March 5, 1986, the People of the State of California (real party in interest) filed a return to the alternative writ of prohibition.

### DISCUSSION

■ In reviewing the trial court's determination on the motion to dismiss, "the crucial inquiry is 'whether the evidence presented at the preliminary examination discloses circumstances from which the magistrate might *reasonably have inferred* the existence of each element of the charged crime' [citations]. Neither the trial court in a section 995 proceeding, nor an appellate court on review thereof, may substitute its judgment as to the weight of the evidence for that of the committing magistrate [citation]; but it is the duty of all three tribunals to discard—as unreasonable—inferences which derive their substance from guesswork, speculation, or conjecture [citations]." (*Birt* v. *Superior Court* (1973) 34 Cal.App.3d 934, 937-938 [110 Cal.Rptr. 321]; italics in original.)

■ Petitioner argues that based upon the evidence presented at the preliminary hearing, he cannot be found guilty of the crime of attempting to influence a juror. We must agree.

Section 95 provides that "Every person who corruptly attempts to influence a juror, or any person summoned or drawn as a juror, or chosen as an arbitrator, or umpire, or appointed a referee, *in respect to his verdict in, or decision of any cause, or proceeding, pending, or about to be brought before him,* either: . . . [¶] Three—By means of any threat, intimidation, persuasion, or entreaty; [¶] . . . is punishable by fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison." (Italics added.)

It is established that """"With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed"; and "after the verdict is received and the jury discharged, . . . the control of the jury and of the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. . . ."'"

---

[2]Unless otherwise indicated, all further section references are to the Penal Code.

[Citations.]" (*People* v. *Peavey* (1981) 126 Cal.App.3d 44, 48-49 [178 Cal.Rptr. 520].)

An attempt to influence jurors as set forth in section 95 must be accompanied by a specific intent. (See *People* v. *Splawn* (1985) 165 Cal.App.3d 553, 559 [211 Cal.Rptr. 638], citing *People* v. *Gallegos* (1974) 39 Cal.App.3d 512, 515 [114 Cal.Rptr. 166].)

The record indicates petitioner's statements to the jurors were made *after* they had returned their verdict and had been dismissed from the case. Thus, it cannot be reasonably inferred that petitioner's statements were made with the intent to influence the jury with respect to that verdict.

The People argue section 95 should be construed to include attempts to influence a jury after the rendition of their verdict. Such construction of the statute, however, would be inappropriate.

"As a general proposition, the rules relating to the construction of statutes are applicable only where statutory language is uncertain and ambiguous." (58 Cal.Jur.3d, Statutes, § 84, p. 434; accord *Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 572 [126 Cal.Rptr. 773].) "It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].)

The language of section 95 is clear and unambiguous. It makes unlawful any attempt "to influence a juror, . . . in respect to his verdict." As we are bound to follow the letter of section 95,[3] we must conclude the court erred by denying petitioner's motion to dismiss his criminal action. Although petitioner's actions may have been the basis for some other violation of law, they certainly did not constitute a violation of section 95.

Let the peremptory writ of prohibition be issued.

Puglia, P. J., and Regan, J., concurred.

---

[3]It is true that the unambiguous literal meaning of the words of a statute may be disregarded in order to avoid absurd results or to give effect to the manifest purpose of the statute. (*Leffel* v. *Municipal Court, supra,* 54 Cal.App.3d at p. 572.) However, the People have failed to demonstrate that a strict interpretation of section 95 would conflict with the obvious intent of the Legislature.