Filed 10/2/15  P. v. Elias CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>REUBEN ELIAS,<br><br>　　　Defendant and Appellant. | E061512<br><br>(Super.Ct.No. RIF1205570)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge. Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Reuben Elias appeals from his conviction of felony making criminal threats (Pen. Code, § 422—count 1); misdemeanor battery (Pen. Code, § 242—count 2); misdemeanor failure to perform duty following an accident (Veh. Code, § 20002, subd. (a)—count 3); and misdemeanor driving under the influence (Veh. Code, § 23152, subd. (a)—count 4). Defendant contends the trial court erred in failing to instruct sua sponte on the lesser included offense of attempted criminal threats. We find no error, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Because defendant's sole contention on appeal relates only to his conviction of making criminal threats, our statement of facts will be largely limited to that count.

On August 14, 2012, employees at a restaurant in Moreno Valley saw defendant and a companion making lines of what appeared to be a white powdery drug on a bar table. The restaurant's assistant manager asked the men to leave. Defendant replied, "Who the hell are you?" in a hostile manner, and the men did not leave. Defendant then said, "Get the F out of here. I'll pull my gun out and shoot you. I'm not going anywhere."

Defendant was wearing basketball shorts, and the assistant manager could see that he did not have a gun. She again told the men to leave and informed them that the police were on the way. She had another employee call the police, and she "was in fear" for the safety of "the guests and the employees." The assistant manager and two other employees directed defendant toward the door and followed him outside. He started

2

making threats "over and over," such as asking the assistant manager and the other employees how their mothers would feel if he put them in a grave. He "chest bumped" the assistant manager while he asked things like, "'What are you going to do? I'm not going anywhere. I'll F'ing kill you, put you in a coffin. How would you like that? I'm going to get my gun out of the car.'" He struck the assistant manager in the face with his open hand. The assistant manager was afraid for her own safety, as well as for the safety of the employees and guests. Defendant said that he had a gun of a specific caliber, although the assistant manager, who was not familiar with guns, did not remember which caliber.

After he struck the assistant manager, defendant started running toward his car. The assistant manager was afraid, and she thought he was going to get a gun. She yelled at everyone to get back inside "[f]or their safety if he really did have a gun in his car." Defendant jumped in his car and accelerated toward the assistant manager. Someone yelled to the assistant manager to get out of the way. Defendant's car struck a tree and curb, and then "fishtailed" and went straight off an embankment onto another car. Defendant attempted to flee, but he was quickly detained and arrested. The assistant manager testified that she remained afraid even after the incident had ended. Another restaurant employee testified the assistant manager was "kind of crying" after defendant hit her in the face.

The jury found defendant guilty of making criminal threats (Pen. Code, § 422, count 1) and also found him guilty of the misdemeanor offenses in counts 2 through 4. The trial court imposed 60 months' formal probation with various terms and conditions.

3

DISCUSSION

Defendant contends the trial court erred in failing to instruct sua sponte on the lesser included offense of attempted criminal threats.

A trial court must instruct the jury sua sponte on a lesser included offense "'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'" (*People v. Barton* (1995) 12 Cal.4th 186, 194-195.)  We review de novo whether the trial court erred in failing to instruct on a lesser included offense.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Attempted criminal threats is a lesser included offense of criminal threats.  (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609 [stating that attempt is a lesser included offense of any completed crime]; *People v. Toledo* (2001) 26 Cal.4th 221, 230 [defining the crime of attempted criminal threats].)  A person commits an attempted criminal threat if, "acting with the requisite intent, [he] makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear . . . ."  (*Toledo*, at p. 231.)

In *People v. Allen* (1995) 33 Cal.App.4th 1149, 1155-1156, the court defined "'sustained fear'" to mean "a period of time that extends beyond what is momentary, fleeting, or transitory."  In that case, the court held that 15 minutes of fear was enough when the defendant who had made the threat was "armed, mobile, and at large."  (*Id.* at

4

p. 1156.) In *People v. Fierro* (2010) 180 Cal.App.4th 1342, the court held that the sustained fear element was satisfied when the defendant's threat to kill the victim and display of a weapon lasted only about a minute, but the victim remained afraid for 15 minutes after reaching a place of safety and calling the police. (*Id.* at pp. 1348-1349 & fn. 5.)

Here, defendant does not contend that the evidence was insufficient to sustain the jury's determination that the assistant manager suffered sustained fear; rather, he argues that the jury could also have concluded that the assistant manager experienced fear only during "the period between [his] threats and his crashing his vehicle," and that such fear was "'momentary' or 'fleeting,'" rather than "'sustained.'" Defendant relies on *In re Ricky T.* (2001) 87 Cal.App.4th 1132, in which a minor student cursed his teacher and threatened him in front of a classroom full of students, saying he would "'kick [his] ass'" and "'I'm going to get you.'" (*Id.* at pp. 1135, 1137, 1140.) The teacher sent the minor to the school office, and the minor complied. The minor made no physical movements toward the teacher, and the teacher did not call the police until the next day. (*Id.* at pp. 1135-1136, 1138.) The court held that there was no evidence to show that the teacher's fear, intimidation, or apprehension during the verbal encounter was more than fleeting or transitory. (*Id.* at p. 1140.)

In *People v. Culbert* (2013) 218 Cal.App.4th 184, the defendant held a gun to his stepson's head, in a misguided effort to discipline the child, and pulled the trigger, although the gun was unloaded. (*Id.* at p. 188.) The court held that the evidence was sufficient to establish sustained fear, rejecting the defendant's argument that the fear

5

could have lasted no more than a split second because the instant defendant pulled the trigger, the child knew the gun was unloaded. (*Id.* at p. 190.) The court explained that the defendant's argument "misapprehend[ed] the nature of fear." (*Ibid.*) The child was screaming during the incident, and he was crying and red-faced afterward. After the incident, the child's behavior worsened, and he did not sleep well and had nightmares. (*Ibid.*)

Here, the assistant manager testified that she suffered fear that continued even after the incident was over: "I didn't know . . . if he was arrested or what was going on. Last I knew, he just took off." A fellow employee testified that the assistant manager had been "kind of crying" after being hit in the face by defendant. We conclude the evidence that her fear was transitory or fleeting was insubstantial. The trial court was not required to instruct on the lesser included offense of attempted criminal threats.

Moreover, even if we assume error, we review a trial court's erroneous failure to instruct on a lesser included offense under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Breverman* (1998) 19 Cal.4th 142, 176-177.) Under that standard, we reverse only if it is reasonably probable the jury would have returned a different verdict in the absence of the error. (*Watson*, at pp. 836-837.) "[E]vidence sufficient to warrant an instruction on a lesser included offense does not necessarily amount to evidence sufficient to create a reasonable probability of a different outcome had the instruction been given." (*People v. Banks* (2014) 59 Cal.4th 1113, 1161, abrogated on another point by *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) In that case, the court stated that even when there was "'some evidence'" to the contrary,

"the far more plausible inference" supported the jury's verdict, and the trial court's failure to instruct on a lesser included offense was harmless. (*Ibid.*) Thus, even if we assume error, we nonetheless conclude the error was harmless.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

7