Filed 11/27/23  In re C.G. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re C.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>C.G.,<br><br>    Defendant and Appellant. | F085494<br><br>(Super. Ct. No. 21JL-00088B)<br><br>**OPINION** |

<u>**THE COURT**</u>\*

APPEAL from an order of the Superior Court of Merced County.  Jennifer O. Trimble, Judge.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*        Before Hill, P. J., Detjen, J. and Meehan, J.

-ooOoo-

Minor C.G. (minor) contends on appeal that the juvenile court's attempted criminal threat finding against him must be reversed because there is insufficient evidence on the record that the threat caused the victim sustained fear. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On June 9, 2022, an original juvenile wardship petition was filed pursuant to Welfare & Institutions Code section 602, subdivision (a), alleging that minor made a criminal threat against Ryan A.[1] (Pen. Code, § 422;[2] count 1).

On June 29, 2022, there was a detention hearing and minor was not detained. At the time the petition was filed, minor was on active deferred entry of judgment for an allegation of infliction of corporal injury resulting in a traumatic condition on a dating partner or parent of child (§ 273.5).

On October 26, 2022, the juvenile court held a jurisdiction hearing. After presenting evidence, the People moved to amend the juvenile wardship petition to add two counts: criminal threat against Rosalinda (§ 422) and disturbing the peace (§ 415). Defense counsel submitted on the count of disturbing the peace but objected to the count of a criminal threat against Rosalinda. The court granted the People's request to add disturbing the peace (§ 415; count 2).

The same day, the juvenile court found minor guilty on count 1 of the lesser included offense of attempted criminal threat (§§ 422, 664) and on count 2 of disturbing the peace.[3]

---

[1]     Victim Ryan has the same initials as his sister, Rosalinda, so we refer to them by their first names to prevent confusion.

[2]     All statutory references are to the Penal Code unless otherwise noted.

[3]     The court also granted probation's request that deferred entry of judgment be lifted in the prior matter and sustained the petition in that matter.

2.

On December 21, 2022, the juvenile court held a disposition hearing. The court declared minor a ward of the court and placed him on electronic monitoring through a home commitment program and ordered other various terms and conditions of probation.

On December 27, 2022, minor filed a notice of appeal.

## FACTUAL SUMMARY

On February 11, 2022, Rosalinda was outside her family's house with her mother, father, and younger brother, Ryan, when minor drove down the street past their house and "[threw] up gang signs towards [Ryan]." Minor was Ryan and Rosalinda's neighbor who lived across the street. Rosalinda testified that minor was the passenger in the vehicle and that she did not see who was driving. She stated that as minor drove past, he said, "It's a 12th Street Gang."

After driving past Rosalinda's house, the vehicle circled back towards them and minor and Ryan cursed at each other. The vehicle then parked across the street from Rosalinda's family's house, and minor exited the vehicle and continued to yell at Ryan from across the street.

Minor "challenge[d]" Ryan to a fight. Rosalinda testified that minor was "trying to get [Ryan] to go across the street to where [minor] was, and [Ryan] kept asking him, 'Well, why do I need to come over there if you're the one with the issue?'" Rosalinda stated that minor then said to Ryan, "I'm going to shoot you," and lifted up his shirt and revealed a metal object tucked in the front waistband of his pants.

Rosalinda testified that she believed the metal object was a silver gun handle based on its shape and color. She stated that, upon seeing the gun, she became afraid for herself and her parents "because you never know where a bullet can go." She believed minor would carry out the threat and she thought she and her parents would be in the line of fire if minor began shooting.

3.

Minor's girlfriend attempted to keep him on his side of the street, but he pushed her away and kept arguing with Ryan. Rosalinda did not see if Ryan took cover or hid in any way. Rosalinda called the police and the incident ended when they arrived.

Merced Police Officer Jesus Lopez was second to arrive on the scene, and spoke to minor initially, but did not take a statement from him.

### *Defense Case*

Minor testified that he was driving down his street with his six-year-old brother in the car when Ryan threw up his hands like he was challenging minor to fight. Minor stated he and Ryan then argued back and forth from their respective front yards, approximately 40 feet across from each other. He testified that Ryan was throwing his hands up, gesturing that he wanted to have a physical fight. Minor said he raised his shorts up, a gesture which he stated was a challenge to fight, while Ryan removed his sweater.

Minor testified he did not have anything in his waistband and denied owning a gun or being affiliated with a gang. Minor claimed he had "problems" with Ryan in the past involving "bickering" back and forth, but that he had never challenged him to fight.

## DISCUSSION

Minor contends that the evidence presented by the prosecution failed to establish the "sustained fear" element of the lesser included offense of attempted criminal threat. The People disagree. We agree with the People.

### A. Law

We review minor's contentions using the same standard of review that applies in adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) "Specifically, we determine whether substantial evidence—'evidence that is reasonable, credible, and of solid value'—supports the juvenile court's findings. [Citation.] We view the evidence 'in the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact the [court] could reasonably have deduced from the evidence.'

4.

[Citation.] We 'accept [all] logical inferences that the [court] might have drawn from the … evidence' [citation], but reject inferences ' "based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work" ' [citations]. We will reverse only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [court's findings].' " (*In re I.A.* (2020) 48 Cal.App.5th 767, 778.)

We do not resolve credibility issues nor evidentiary conflicts in resolving a claim of insufficient evidence. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) It is not our job to reweigh the evidence or assess the credibility of the witnesses. (*People v. Perry* (1972) 7 Cal.3d 756, 785 (*Perry*).)

We must also rely on the evidence that was actually presented at trial instead of what we find lacking in the prosecution case. (*People v. Medina* (2009) 46 Cal.4th 913, 921; *People v. Rodriguez* (1999) 20 Cal.4th 1, 12.)

To make a criminal threat, the prosecution must show, "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat … was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 (*Toledo*); § 422.) To determine whether a communication constitutes a threat, the court considers the communication on its face

and in the context of its surrounding circumstances.  (*People v. Bolin* (1998) 18 Cal.4th 297, 339–340.)

The lesser included offense of attempted criminal threat requires that:  (1) minor specifically intended to commit a criminal threat; (2) minor committed an act that goes beyond mere preparation in committing the threat; and (3) under the circumstances, the intended threat was sufficient to cause a reasonable person to be in sustained fear. (*People v. Chandler* (2014) 60 Cal.4th 508, 525; *Toledo*, *supra*, 26 Cal.4th at pp. 230–231; § 21a.)  "An attempt to commit a crime consists of two elements:  a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."  (§ 21a.)

The intent required for an attempted criminal threat is a specific intent " 'to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.' "  (*People v. Chandler*, *supra*, 60 Cal.4th at p. 516; *Toledo*, *supra*, 26 Cal.4th at pp. 230–231.)

The crime of attempted criminal threat encompasses situations where a minor intends to commit a criminal threat "but is thwarted from completing the crime by some fortuity or unanticipated event."  (*Toledo*, *supra*, 26 Cal.4th at p. 232.)

### B.    Analysis

Here, the evidence is sufficient to support the juvenile court's finding that minor committed the offense of attempted criminal threat, as the record shows he had the specific intent to make a threat, and did so by pulling up his shirt to show a gun in his waistband while saying, "I'm going to shoot you," which was sufficient to cause a reasonable person to be in sustained fear.

Minor first contends that there is insufficient evidence to support the juvenile court's finding that he made an attempted criminal threat because the record does not

contain evidence showing his threat caused Ryan sustained fear. He argues that because Ryan did not testify, "we have no way of knowing or evaluating whether Ryan was afraid for himself or his family, or if the alleged threat did not *actually* cause him to be in sustained fear." He contends that, "[w]here the victim/listener has not testified to the effect of the alleged threat, this court should not guess and make a determination based on a hypothetical reasonable person."

However, "absence of proof of that element [of sustained fear] does not defeat a conviction for attempted criminal threat." (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607 (*Sylvester C.*).) "[A]ffirmative evidence proving beyond a reasonable doubt whether [the defendant] succeeded or failed [to cause sustained fear] appears unnecessary and its absence no reason for acquitting [the defendant] of the crime of attempted criminal threat." (*Id.* at p. 611.)

In *Toledo*, the victim heard the threat, but testified that the threat did not cause her sustained fear. The court found that her lack of fear was a "fortuity or unanticipated event" that thwarted the defendant's efforts to commit a criminal threat. (*Toledo*, *supra*, 26 Cal.4th at p. 232.) Here, as in *Toledo*, all elements of the crime of criminal threat were established, except whether the victim, Ryan, experienced sustained fear.[4] However, unlike *Toledo*, the victim here, Ryan, did not testify. The witness, Rosalinda, only testified as to her own fear caused by the threat. She did not testify about whether Ryan heard the threat or whether the threat caused him sustained fear.

However, in *Sylvester C.*, the victim, like Ryan, also did not testify. (*Sylvester C.*, *supra*, 137 Cal.App.4th at p. 604.) There, the court found that the " 'unintended fortuity,' " thwarting the completion of the criminal threat was that the victim did not

---

[4] The court was entitled to find credible Rosalinda's testimony about minor pulling his shirt up to reveal a gun in his waistband and yelling, "I'm going to shoot you," as it is not our job to reweigh the evidence. (See *Perry*, *supra*, 7 Cal.3d at p. 785.)

testify and there was no evidence on the record as to whether the threat caused the victim to suffer sustained fear. (*Sylvester C.*, at p. 607.) It explained:

> "the 'unintended fortuity,' was not proof the victim experienced no fear [as in *Toledo*] but a *failure of proof* whether he did or did not. This failure of proof resulted largely from the absence of that victim from the trial and thus the absence of evidence from him about his state of mind upon hearing [the minor] utter his threat. Nor did the prosecution produce sufficient evidence from any other source regarding [the victim's] actual state of mind on that occasion." (*Sylvester C.*, *supra*, 137 Cal.App.4th at p. 607.)

The *Sylvester C.* court concluded that "the *failure to prove* the defendant succeeded is capable of supporting an attempted criminal threat conviction just as would *affirmative evidence* he failed to do so." (*Sylvester C.*, *supra*, 137 Cal.App.4th at p. 608.) It explained that, while the prosecution failed to prove beyond a reasonable doubt the defendant's threat was ineffectual in arousing sustained fear in the victim or that the defendant failed to complete or was prevented from completing the crime of criminal threat,

> "[o]bviously, the prosecutor was not trying to prove [the defendant]'s failure but rather his success in instilling fear in the [victim] he was threatening. So all the prosecution did in this instance was fail to prove [the defendant] succeeded in completing this intended crime rather than affirmatively proving he was frustrated in his attempt to do so. [¶] We conclude … it would be anomalous and contrary to the Legislature's obvious intent in punishing attempted crimes to completely absolve a defendant if the evidence falls just a bit short of proving he succeeded in completing his intended crime, while at the same time punishing other defendants when the evidence demonstrates they failed miserably. One who gets close and may or even probably (but not beyond a reasonable doubt) did succeed in achieving his criminal goal is at least as dangerous and worthy of punishment as one who is a demonstrable failure. [¶] It would be absurd to construe the attempt statutes to produce such absurd results. And we refuse to do so. Rather we take a commonsense approach. In practical terms, there is no difference whether the failure element of an attempt crime is satisfied because the prosecution proves failure or because it fails to prove success in committing the completed crime. In this context, at least, it is a zero sum game—success and failure are opposites—success

8.

and nonsuccess. Whether the evidence proves the defendant failed or fails to prove his success, one element of the completed crime is missing. Yet, as they are in this case, the intent to commit that crime and all the acts necessary to constitute an attempt may be present." (*Sylvester C.*, *supra*, 137 Cal.App.4th at pp. 608–609.)

Here, as in *Sylvester C.*, "affirmative evidence proving beyond a reasonable doubt whether" minor's threat succeeded or failed to cause Ryan sustained fear "appears unnecessary and its absence no reason for acquitting [the defendant] of the crime of attempted criminal threat." (See *Sylvester C.*, *supra*, 137 Cal.App.4th at p. 611.)

Minor next contends that there is insufficient evidence of attempted criminal threat because the record does not show whether Ryan personally heard the threat. However, the reasoning of *Sylvester C.* also extends to the lack of evidence as to whether Ryan personally heard minor's threat. The lack of evidence about whether Ryan personally heard minor's threat is another unintended fortuity that prevented minor from being prosecuted for committing a completed criminal threat, but, as discussed above, its absence is "no reason for acquitting [the defendant] of the crime of attempted criminal threat." (See *Sylvester C.*, *supra*, 137 Cal.App.4th at p. 611.)

Minor further contends there is insufficient evidence that his threat was unequivocal, unconditional, immediate and specific enough to convey gravity and a sense of purpose and immediate prospect of execution because there is not evidence Ryan heard the threat. He argues, "[t]his court has no way of knowing what Ryan saw and cannot guess whether Ryan saw, or thought he saw, a gun in minor's waistband, or whether Ryan just thought minor was hiking his pants up to fight."

The People first contend minor waived this argument because minor failed to give it its own subheading in his opening brief.

Minor argues that it is only an extension of his argument that there is insufficient evidence that Ryan personally heard his threat, because if he did not hear it, it did not

convey an immediate prospect of execution, and thus, this argument was not required to have its own heading.

We may disregard arguments not properly presented under appropriate headings. (See Cal. Rules of Court, rule 8.204 (a)(1) ["Each brief must:  [¶]  …  [¶] (B) State each point under a separate heading or subheading summarizing the point, and support each point by argument"]; *Winslett v. 1811 27th Avenue, LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6 ["Arguments not raised by a separate heading in an opening brief will be deemed waived."]; *Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 59 ["We may disregard arguments not properly presented under appropriate headings."]; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 ["The failure to head an argument … constitutes a waiver."].)

Regardless, we conclude there is sufficient evidence that minor's threat was unequivocal, unconditional, immediate and specific enough to convey gravity and a sense of purpose and immediate prospect of execution, even without evidence that Ryan personally heard it.  As discussed above, the lack of evidence as to whether Ryan heard the threat and saw a gun, or just thought minor was hiking up his pants, is an "unintended fortuity" that is unnecessary, and "no reason for acquitting [the defendant] of the crime of attempted criminal threat."  (See *Sylvester C.*, *supra*, 137 Cal.App.4th at p. 611.)  Further, the juvenile court was entitled to credit Rosalinda's testimony that minor raised his shirt, showing a gun in his waistband and yelled to Ryan that he would shoot him, causing her to fear for herself and her family who were in the same front yard as Ryan.  (See *Perry*, *supra*, 7 Cal.3d at p. 785.)  Based on that testimony, the court could make the reasonable inference that minor attempted to make a threat that was specific enough to convey an immediate prospect of execution.

Minor further argues that Rosalinda's testimony was not corroborated by other evidence.  However, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently

10.

improbable," and it is not our job to reweigh the evidence or assess the credibility of witnesses. (*People v. Scott* (1978) 21 Cal.3d 284, 296; see *People v. Panah* (2005) 35 Cal.4th 395, 489; see also *Perry*, *supra*, 7 Cal.3d at p. 785.) Here, Rosalinda's testimony was neither physically impossible, nor inherently improbable. Accordingly, there is sufficient evidence that minor attempted to make a threat that was "unequivocal, unconditional, immediate and specific enough to convey gravity and a sense of purpose and immediate prospect of execution," regardless of whether Ryan personally heard the threat.

Because we find all the other elements of an attempted criminal threat fully satisfied and conclude the absence of proof minor succeeded to make a criminal threat is sufficient to satisfy the failure element, we affirm the juvenile court's finding of attempted criminal threat.

## DISPOSITION

The juvenile court's order is affirmed.